UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 04-CV-638-KKC

LAUREL KNUCKLES SWILLEY,                                        PLAINTIFF,

VS:                               **OPINION AND ORDER**

JEFFREY R. TIPTON and
WESLEY R. TIPTON,                                              DEFENDANTS.

This matter is before the Court on the Motions for Summary Judgment of the Plaintiff, Laurel Knuckles Swilley ("Swilley") (Rec. Nos. 106 and 110), and the Defendants (Rec. No. 109). For the following reasons, the Court will GRANT the Defendants' Motion for Summary Judgment and will DENY as moot the Plaintiff's Motions for Summary Judgment.

**I.       FACTS.**

**A.       The Family Partnership and the Estate.**

On December 23, 1997, Swilley's mother, Ruth H. Knuckles ("Knuckles"), created the Ruth H. Knuckles Family Limited Partnership (the "Family Partnership"). (Rec. No. 109, Defs.' Mot. for Summ. J., Ex. A). Knuckles was the sole general partner of the Family Partnership. Her four daughters – Swilley, Ruth Whitcomb Knuckles ("Whitcomb"), Susan Knuckles Roberts ("Roberts") and Melissa Knuckles Barton ("Barton") – were equal limited partners. (Rec. No. 2, Amended Complaint ¶ 8). Knuckles died on February 18, 1998 and Swilley and her sister Roberts were later elected general partners of the Family Partnership. (Rec. No. 2, Amended Complaint ¶ 8). The purpose of the Family Partnership was "owning, developing, leasing, managing, and selling of such real property as General Partners may purchase on behalf of the Partnership, and the conduct of any other business which shall be legal for a limited partnership to conduct in Kentucky." (Rec. No. 109,

Defs.' Mot. for Summ. J. at 3, Ex. A).

After Knuckles' death, Roberts and Barton were appointed co-executrixes of Knuckles' estate (the "Estate"). (Rec. No. 109, Defs.' Mot. for Summ. J. at 4). Pursuant to Knuckles' will, all of Knuckles' real property was to pass to the Family Partnership. (Rec. No. 2, Amended Complaint ¶ 9). Knuckles' personal property was to pass to her four daughters in equal share subject to direction by a written memorandum. Knuckles made a specific cash bequest in the amount of $125,000 to be held in trust for the benefit of Knuckles' only grandchild. The remainder of Knuckle's estate, after payment of all debts and taxes, was to pass to her daughters in equal share with Whitcomb's share to be held in trust. (Rec. No. 109, Defs.' Mot. for Summ. J. at 3; Rec. No. 2, Amended Complaint ¶ 9).

**B.      Tipton's Representation of Family Partnership and Swilley in Partition Action.**

After Knuckles' will was admitted to probate and her estate opened, certain claims by and against the Estate were filed. (Rec. No. 109, Defs.' Mot. for Summ. J. at 4). Jeff Tipton represented the co-executrixes of the Estate in these claims. (Rec. No. 109, Defs.' Mot. for Summ. J. at 4). On September 24, 1998, a partition action (the "Partition Action") was filed in Bell Circuit Court against the Family Partnership, Roberts, Barton, Whitcomb and Swilley. (Rec. No. 109, Defs.' Mot. for Summ. J. at 4 & Ex. F). The Partition Action sought to sell two parcels of property located in Bell County which were jointly owned by Knuckles and her brother at the time of Knuckles' death. (Rec. No. 109, Defs.' Mot. for Summ. J. at 4). Jeff Tipton filed an answer and an intervening complaint in the Partition Action on behalf of the named defendants, including Swilley and the Family Partnership. (Rec. No. 109, Defs.' Mot. for Summ. J. at 4-5).

By November 8, 1999, the proceeds from the sale of all the real property at issue in the

2

Partition Action had been received.  On November 22, 1999, the Bell Circuit Court entered an Agreed Order authorizing the distribution of the sale proceeds.  (Rec. No. 109, Defs.' Mot. for Summ. J. at 5).  Shortly thereafter, Jeff Tipton distributed the sisters their respective share of the proceeds.  (Rec. No. 109, Defs.' Mot. for Summ. J. at 5).

### C.    Tipton's Representation of Roberts and Barton against Complaint by Swilley and Whitcomb in the Dissolution Action.

On November 17, 1999, Jeff Tipton filed, on behalf of Roberts and Barton, a verified application for judicial dissolution of the Family Partnership in Bell Circuit Court (the "Dissolution Action").  (Rec. No. 109, Defs.' Mot. for Summ. J. at 6 & Ex. H).  Swilley states that Jeff Tipton advised the co-executrixes of the Estate to judicially dissolve the Family Partnership as a tax benefit to the Estate and certain heirs. (Rec. No. 2, Amended Complaint ¶ 12).  Swilley states that she was never consulted on this matter.  (Rec. No. 2, Amended Complaint ¶ 12).

On February 4, 2000, attorney David Smith filed an Answer, Counterclaim and Third Party Complaint on behalf of Swilley and Whitcomb.  (Rec. No. 109, Defs.' Mot. for Summ. J. at 6 & Ex. I). In their Counterclaim and Third Party Complaint in the Dissolution Action, Swilley and Whitcomb alleged that their sisters, Roberts and Barton, mismanaged the Estate and Family Partnership; dissipated the assets of the Estate and Family Partnership; and breached their fiduciary duties as representatives of the Estate and Family Partnership.  (Rec. No. 109, Defs.' Mot. for Summ. J. at 6 & Ex. I).

Swilley and Whitcomb requested among other relief the removal of Barton and Roberts as co-executrixes of the Estate; compensatory and punitive damages; and that the Family Partnership be kept in tact. (Rec. No. 109, Defs.' Mot. for Summ. J. at 6 & Ex. I).

3

### D.      Settlement of the Dissolution Action.

On December 9, 2002, Swilley, Roberts and Barton executed a "Release of All Claims" in

the Dissolution Action providing:

> That for and in mutual consideration and release of any and all complaint and
> counterclaims and third part[y] claims now and forever by and between [Roberts and
> Barton], co-administrators of [the Estate] and [Swilley] and will tender to the
> Honorable Court to enter the Agreed Order of Judgment tendered on December 9,
> 2002.
>
> Further [Knuckles] promises and agrees to permit the sale of the real properties and
> related assets to be credited toward appropriate payments to [the Estate] and its
> representatives.

(Rec. No. 109, Defs.' Mot. for Summ. J., Ex. J.).

An Agreed Order, also entered on December 9, 2002, ordered the liquidation of Swilley's

one-fourth interest in an "A.G. Edwards Account."  (Rec. No. 109, Defs.' Mot. for Summ. J., Ex.

J).  Swilley received $235,000 in exchange for executing the Release and Agreed Order.  (Rec. No.

123, Reply, Ex. 4, Swilley Dep. at 58).  Defendants assert that, with the release, Swilley agreed to

release any and all claims she had in exchange for the $235,000. (Rec. No. 109, Defs.' Mot. for

Summ. J. at 6). On March 31, 2004, the Bell Circuit Court entered an Amended Order stating:

> The Court takes judicial notice of the fact that [Swilley] has settled her claim against
> the plaintiffs pursuant to an Agreed Order entered by the Court on December 9, 2002.
> The Court further notes that [Swilley] previously moved the Court to set aside this
> Judgment and said Motion has been overruled by the Court. The Court adjudges that
> the Agreed Order entered by the parties and the Settlement Agreement executed by
> the plaintiffs and [Swilley] settled any claims which [Swilley]  has against the
> plaintiffs.

(Rec. No. 109, Defs.' Mot. for Summ. J., Ex. K).

 The Amended Order also states that the Court had granted the plaintiffs Roberts and Barton

summary judgment on the claims made by Swilley and Whitcomb and had dismissed those claims.

4

(Rec. No. 109, Defs.' Mot. for Summ. J., Ex. K).  The Amended Order further ordered Barton and Roberts to file a Final Inventory of the Assets of the Estate, the Family Partnership and the Ruth Whitcomb Knuckles Trust.  The court ordered that, if no exceptions to the inventories were filed, then the Family Partnership would be dissolved and the net assets including real estate of the Family Partnership and the Estate would be divided into four equal shares with Roberts, Barton and Whitcomb receiving their share of the assets in fee simple. The court ordered the remaining one-fourth of the assets to be deposited into an interest bearing account to be later divided in accordance with the rule of the Kentucky Court of Appeals if Swilley filed an appeal. (Rec. No. 109, Defs.' Mot. for Summ. J., Ex. J).

Despite the Bell Circuit Court's Amended Order, Swilley asserts that, with the Agreed Order and Release, she did not intend to relinquish all interest that she had in the assets of the Estate or Family Partnership.  Swilley states that  "personal circumstances" caused her to settle her claims against Roberts and Barton with the Agreed Order and Release. (Rec. No. 2, Amended Complaint ¶ 19). In her deposition in this matter, Swilley explained that the "personal circumstances" consisted of her obligation to pay $200,000  in a settlement agreement in another matter which became due in December 2002. (Rec. No. 123, Defs'. Reply, Ex. 4 at 21).

 Swilley states that, under the terms of the Agreed Order in the Dissolution Action, she received $235,000 but that this was only an advance against the "balance of her inheritable and partnership interests." (Rec. No. 2, Amended Complaint ¶ 19).  Swilley states that she did not intend to in any manner divest herself of the remainder of her interest in the Estate or the Limited Partnership.  (Rec. No. 2, Amended Complaint ¶ 19). She states that Jeff Tipton "enticed" her into entering into the Agreed Order and Release "on the belief that she had not divested herself of

5

remainder of her inheritable interests and ownership interest" in the Family Partnership. (Rec. No. 2, Amended Complaint ¶ 31).

On November 17, 2004, the Bell Circuit Court ordered that all sums held in escrow in the matter should be paid to Roberts and Barton as co-administrators of the Estate and in Barton's capacity as Trustee for the Ruth Whitcomb Knuckles Trust. (Rec. No. 109, Defs.' Mot. for Summ. J., Ex. M).  With this Order, the Bell Circuit Court effectively ruled that Swilley had no interest in the Estate or Family Partnership.   On April 28, 2005, the Kentucky Court of Appeals dismissed as untimely Swilley's appeal.  (Rec. No. 109, Defs.' Mot. for Summ. at 6).   Swilley then moved the Bell Circuit Court to alter, amend or vacate its November 17, 2004 Order.  On May 25, 2006, the Bell Circuit Court denied the motion and ordered the Estate closed.  (Rec. No. 109, Defs.' Mot. for Summ. J. at 7, Ex. N).

### E.    Swilley Files this Action.

Swilley commenced this action on December 23, 2004. (Rec. No. 1, Complaint).  She asserts breach of fiduciary duty, fraud, breach of contract and negligence claims against Jeff Tipton and Wesley R. Tipton. (Rec. No. 2, Amended Complaint ¶¶ 20-68).  Swilley asserts that Wesley R. Tipton should be held vicariously liable for the acts of Jeff Tipton. (Rec. No. 2, Amended Complaint ¶¶ 69-74). Swilley seeks damages and an accounting of amounts the Defendants received and disbursed in their representation of the Estate and Limited Partnership.

Initially, Swilley also named Tipton & Tipton, LLC as a defendant in this action.  However, upon the Defendants' representation that Tipton & Tipton, LLC is a real estate holding company with no relationship to the Defendants' practice of law, Swilley agreed to dismiss Tipton & Tipton from this action.  (Rec. No. 14).

6

The Defendants move for summary judgment on Swilley's claims. (Rec. No. 109). Swilley moves for summary judgment on the issues of Wesley R. Tipton's vicarious liability and on the issues of whether there was an attorney-client relationship between her and Jeff Tipton and whether Jeff Tipton had a conflict of interest when he represented Swilley's sisters in the Dissolution Action. (Rec. Nos. 106 and 110).

## II.     Standard on Summary Judgment.

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 322-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of

7

the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must view the facts and draw all inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The moving party must show conclusively that there is no genuine issue of material fact. *Id.* However, at the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249). The Court is not to judge the evidence or make findings of fact. *60 Ivy Street Corp.,* 822 F.2d at 1435-36. Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

"The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). "The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris,* 260 F.3d 654, 665 (6th Cir. 2001).

III.     **Defendants' Motion for Summary Judgment (Rec. No. 109).**

A.     **This Court has Subject Matter Jurisdiction over Swilley's Claim.**

The Defendants argue that the Court should dismiss this action for lack of subject matter jurisdiction. This Court has original jurisdiction of all civil actions between citizens of different states where the matter in controversy exceeds $75,000. 28 U.S.C. § 1332 (a)(1). The Defendants allege that Swilley brings this action in her individual capacity as a general partner of the Family Partnership. Defendants further argue that, because a limited partnership is deemed to be a citizen of every state where its general and limited partners reside, the Family Partnership is a Kentucky citizen. The Defendants argue that because both Tiptons are Kentucky citizens, this matter lacks diversity.

Swilley responds that she brings this action "only in her right as an individual. . ." (Rec. No. 118, Response at 7). She specifically denies that she is acting on behalf of the Family Partnership. (Rec. No. 118, Response at 7). Accordingly, because Swilley is a South Carolina citizen, this Court has diversity jurisdiction over this matter.

B.     **This Action is not Barred by the Statute of Limitations.**

Defendants also argue that this action is barred by KRS § 413.245, which imposes a one-year limitation on actions for professional negligence. The statute provides that "a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been discovered by the party injured." KRS § 413.245.

In *Pedigo v. Breen*, 169 S.W.3d 831 (Ky. 2005), the Kentucky Supreme Court stated the

9

following:

> A professional negligence claim does not accrue until there has been a negligent act and until reasonably ascertainable damages are incurred. When professional negligence occurs during the course of formal litigation, we have held that the injury becomes definite and non-speculative when the underlying case is final. Until the underlying case is final and non-appealable, the statute of limitations is tolled because no cognizable claim has yet accrued.

*Id*. at 833.

In *Hibbard v. Taylor*, 837 S.W.2d 500 (1992), the Kentucky Supreme Court stated "[i]t is evident to us that [plaintiff] discovered his cause of action when he reasonably should have – when the result of the appeal became final and the trial court's judgment became the unalterable law of the case.  Only then was [plaintiff] put on notice that the principal damage. . .was real. . . ."*Id*.

In this action, Swilley asserts that she incurred damages when Jeff Tipton represented her sisters in an action to dissolve the Family Partnership.  Namely, she asserts that, in that action, Tipton enticed her into entering an Agreed Order and Release which the Bell Circuit Court ultimately determined divested Swilley of her interest in the Family Partnership. On November 17, 2004, the Bell Circuit ordered that Swilley's portion of the net assets of the Family Partnership and Estate, which had been held in escrow until Swilley's appeal was resolved, should be paid to Roberts and Barton. (Rec. No. 109, Defs.' Mot. for Sum. J., Ex. M).

Accordingly, the earliest date that Swilley's damages became fixed and non-speculative was November 17, 2004.  The latest date that her damages became fixed and non-speculative was May 25, 2006, the date that Bell Circuit Court denied Swilley's motion to alter, amend or vacate the November 17, 2004 order.  Either way, Swilley's claim against the Defendants which was filed on December 23, 2004 is not barred by the applicable statute of limitations.

10

### C.       Tipton's Acts did not Cause Swilley's Damages.

Swilley must prove that the Defendants' actions proximately caused her damages.  *See Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003)(for legal malpractice claim, plaintiff must show attorney's negligence was proximate cause of damage to client); *Miller's Bottled Gas, Inc. v. Borg-Warner Corp.*, 56 F.3d 726, 735 (6th Cir. 1995)(plaintiff in fraud action must show damages were proximately caused by fraud); *Hogg v. Edley*, 32 S.W.2d 744, 745 (Ky. 1930)(breach of contract); *North American Stainless v. PNC Bank, Ky., Inc.*, 229 F.3d 1153 at *5 (6th Cir. 200)(breach of fiduciary duty).

Swilley asserts that she was damaged when the Bell Circuit Court determined that the Agreed Order and Release entered in the Dissolution Action divested Swilley of her interest in the Family Partnership and the Estate.  Swilley alleges that Tipton caused these damages because he enticed her into entering into the Agreed Order and Release "on the belief that she had not divested herself of remainder of her inheritable interests and ownership interest" in the Family Partnership. (Rec. No. 2, Amended Complaint ¶ 31).[1]  Nevertheless, Swilley presents no evidence that Tipton's actions caused her to enter into the Agreed Order and Release.  In fact, the evidence directly contradicts that assertion.

Tipton did not represent or advise Swilley in the Dissolution Action.  She was represented

---

[1] Swilley also alleges that Jeff Tipton advised the co-executrixes of the Estate, Roberts and Barton, to co-mingle the assets and obligations of the Estate with those of the Partnership.  (Rec. No. 2, Amended Complaint ¶ 10). She alleges that this advice "led to multiple ongoing acts of co-mingling the assets and obligations" of the Estate with those of the Family Partnership and certain testamentary and inter vivos trusts and with the personal assets of one of the co-executrixes.  (Rec. No. 2, Amended Complaint ¶ 10).These are the same allegations that Swilley asserted against her sisters directly in the Dissolution Action. The Bell Circuit Court dismissed Swilley's actions against her sisters.  Swilley has presented no evidence that Tipton advised Roberts and Barton to "co-mingle" the assets of the Estate and partnership or that assets were, in fact, co-mingled.  Further, in her deposition testimony, she made clear that the basis of her complaint against Jeff Tipton was the alleged "conflict of interest" in representing her sisters in the Dissolution Action.  (Rec. No. 123, Defs.' Reply, Ex. 4, Swilley Dep. at 39,53)

11

by other counsel in that matter. Moreover, Swilley is herself an attorney. (Rec. No. 123, Defs.' Reply, Ex. 4, Swilley Dep. at 53). Accordingly, Swilley should not have relied on Tipton's advice in entering into the Agreed Order and Release. Nor should she have been enticed into signing any legal document that she did not understand. Finally, it is undisputed that Swilley drafted the Release and Agreed Order.  (Rec. No. 123, Defs.' Reply, Ex. 4, Swilley Dep. at 57, 81-82). Tipton did not advise Swilley in drafting the Release or have any role in drafting the Agreed Order. (Rec. No. 123, Defs.' Reply, Ex. 4, Swilley Dep. at 58, 81).   It is not possible that Tipton misled Swilley as to the legal significance of a document that she herself drafted.

Accordingly, Swilley has failed to produce any evidence that Tipton's actions caused her to enter into the Agreed Order and Release.  For this reason, her claims against the Defendants must be dismissed.

### D.    Swilley Waived Objection to Tipton's Representation of Sisters in Dissolution Action in State Court.

"It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." *In re Valley-Vulcan Mold Co.*, 5 Fed.Appx. 396, 401 (6th Cir. 2001)(quoting *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir.1983).  The former client cannot sit on the right for tactical purposes until it would be most helpful to his position. Failure to move for disqualification at the earliest practical opportunity will constitute a waiver. *See Central Milk Producers Cooperative v. Sentry Food Stores,* 573 F.2d 988, 992 (8th Cir.1978).

The Court recognizes that these case deal with a trial court's denial of a motion to disqualify

counsel.  Nevertheless, the same rationale should apply in a case like this where a former client fails to object at all to a lawyer's conflict of interest in a state court case and then later files a separate federal action against the lawyer based on the conflict of interest.  In this case, Swilley was aware that Tipton was representing her sisters in the Dissolution Action from the date the complaint in that matter was filed.  She was certainly aware of the conflict in February 2000 when she filed a counterclaim against her sisters, alleging mismanagement and breach of fiduciary duty, and served the counterclaim on Tipton.  (Rec. No. 109, Def.'s Mot. for Summ. J., Ex. I).  The time and place for objecting to Tipton's representation of her sisters in the Dissolution Action was in the Dissolution Action itself in Bell Circuit Court.

It is undisputed that Swilley never moved to disqualify Tipton in the Dissolution Action or otherwise raised an objection to Tipton's representation of her sisters in that action.  The record discloses no reason why Swilley, who was represented by counsel in the Dissolution Action and is herself an attorney, failed to move for the disqualification of Tipton if she believed he had a conflict of interest. Swilley's failure to move for disqualification of Tipton in the Dissolution Action constituted a waiver of any claim she may have against Tipton based on conflict of interests.

As Swilley notes, the Defendants failed to plead the affirmative defense of waiver in their answer.  (Rec. No. 46, Amended Answer). Nevertheless, "[f]ailure to raise an affirmative defense by responsive pleading does not always result in waiver."  *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997).  "The purpose of Rule 8(c) of the Federal Rules of Civil Procedure is to give the opposing party notice of the affirmative defense and a chance to respond."  *Id*. In *Sushka*, the Sixth Circuit held that, where failure to raise an affirmative defense did not result in surprise or unfair prejudice to the plaintiff, then the district court does not abuse its discretion by permitting the

13

defendants to raise the affirmative defense on summary judgment. *Id.*

In this action, Swilley has had ample opportunity to respond to the Defendants' waiver defense. In her deposition in this matter, the Defendants questioned Swilley about her failure to object to Tipton's representation of her sisters in the Dissolution Action and her failure to move to disqualify him. (Rec. No. 23, Defs.' Reply at 53-54).   As an attorney, she should have been aware that the Defendants would assert that she had waived any objection to the conflict of interest.  She has not requested additional time to respond to the defense. Further, she has not attempted to demonstrate any prejudice that she has suffered as a result of the Defendants' assertion of the waiver defense in their Motion for Summary Judgment.  Accordingly, the Court will permit the Defendants to assert the defense in their Motion for Summary Judgment.

## IV.    CONCLUSION.

For all the above reasons, the Court hereby Orders as follows:

1)    The Defendants' Motion for Summary Judgment (Rec. No. 109) is GRANTED;

2)    The Plaintiff's claims against the Defendants are DISMISSED;

3)    The Plaintiff's Motions for Summary Judgment (Rec. Nos. 106 and 110) are DENIED as moot; and

4)    This action is STRICKEN from the active docket of this Court.

Dated this 30th day of January, 2007.



**Signed By:**

***Karen K. Caldwell***

**United States District Judge**